Philip Milestone (5396502)
MILESTONE LEGAL, P.C.
43 W. 43rd St., #40
New York, NY 10036
Tel: (212) 653-0084
Philip@MilestoneLegal.com

*Attorneys for Plaintiff John Butler*

## UNITED STATES DISTRICT COURT - SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN CHRISTOPHER BUTLER, an individual<br><br>Plaintiff,<br><br>-v-<br><br>RAVI SURIA, an individual<br><br>Defendant. | Civil Action No. 1:17-cv-3077<br><br>**COMPLAINT**<br><br><br>**JURY DEMANDED** |

Plaintiff John Butler, by his attorneys Milestone Legal, P.C., as and for his Complaint against Defendant Ravi Suria, hereby alleges as follows:

### NATURE OF THE ACTION

1. This action arises from Defendant Suria's willful and repeated failure to repay, or even discuss the repayment of, a loan made to him by Plaintiff Butler despite consistent demand for repayment by Plaintiff Butler. Defendant's consistent failure to pay, notwithstanding Plaintiff's repeated efforts to collect, have resulted in significant injury to Plaintiff for which Plaintiff seeks redress in this Action.

## THE PARTIES

2. Plaintiff John Butler is an individual currently engaged in a start-up focused on health, fitness and wellness. He lives and works in San Francisco, California and is a citizen of the state of California.

3. Defendant Ravi Suria is an individual who lives and works in New York, New York and is a citizen of the state of New York.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction pursuant to 28 U.S.C. §1332(a) as this action is between citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in this district pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to the claim occurred in the District and Defendant Suria is a resident of the borough of Manhattan, New York.

## FACTS RELEVANT TO ALL CAUSES OF ACTION

6. Defendant Suria and Plaintiff Butler have known each other for many years. They first met in New Orleans, Louisiana at Tulane University. Indeed, Mr. Suria was the best man at the wedding of John Butler and Melanie Butler.[1]

7. Because of that friendship, in 2007, Mr. Butler and Ms. Melanie Butler lent to Mr. Suria approximately GBP£75,000 upon Mr. Suria's request. The loan, by agreement of the lenders and borrower, accrued interest at 15% and Mr. Suria timely paid all amounts owed, principal and interest.

8. Because of the positive loan experience in 2007, in December of 2009 when Mr. Suria again approached Mr. Butler and Ms. Melanie Butler and asked for another loan of GBP£75,000

---

[1] Mr. John Butler and Ms. Melanie Butler have since divorced. The divorce was finalized in 2015.

(USD$122,250)[2] John and Melanie again lent him the funds. The loan was made, by agreement, at 15% interest upon Mr. Ravi's promise to repay the money. Plaintiff made the loan in reasonable reliance on Defendant Suria's promise to repay.

9. In April 2010, Mr. Suria again requested a loan from Plaintiff Butler and Ms. Melanie Butler, this time in the amount of GBP£50,0000 (USD$84,000),[3] explaining only that he was in a "crisis." Plaintiff and Ms. Melanie Butler again lent Defendant the requested funds on terms identical to the prior loan (i.e. at 15% interest and with reliance on Defendant's promise to repay)

10. Mr. Suria returned to John and Melanie a third time in in April of 2013 and requested another loan for GBP£16,650 (USD$27,972).[4] The money was, again, loaned when Mr. Suria agreed to pay the money back at 15% annual interest.

11. The loans[5] accrued, but were not repaid. By the end of December in 2010, Mr. Butler and Melanie Butler had lent Mr. Suria a sum equaling two hundred thirty three thousand dollars and 46/100 (US$233,466).

12. As the loan accrued interest at 15%, and since Mr. Suria made no repayments of principal or interest, by the end of December in 2014, the loan had grown to four hundred forty three thousand three hundred fifteen dollars ($443,315).

13. In 2015, Mr. Butler and Ms. Melanie Butler finalized their divorce which, among other things, allocated 60% of the outstanding loan debt to Mr. Butler and 40% of the debt to Ms. Melanie Butler. Mr. Suria participated in several conversations about this settlement and divorce because the debt was a significant negotiation point during the separation of Plaintiff Butler and Ms. Melanie Butler. This action by Plaintiff Butler in this Court concerns only the debt owed by

---

[2] On December 9, 2009, the date of the loan, a pound sterling traded for USD$1.63. Source: https://currencies.zone/historic/british-pound/us-dollar/p44.
[3] On April 6, 2010, the date of the loan, a pound sterling traded for USD$1.68. Source: https://currencies.zone/historic/british-pound/us-dollar/p46
[4] On April 19, 2013, the date of the loan, a pound sterling traded for USD$1.68. Source: https://currencies.zone/historic/british-pound/us-dollar/p21
[5] The series of verbal agreement, monies lent and communication surrounding the loans are referred to herein as the "Loan Agreement."

Mr. Suria to Mr. Butler which, post-divorce at the end of July in 2015, equaled two hundred ninety thousand one hundred fifty four dollars ($290,154).

14. In July of 2015, Mr. Butler contacted Mr. Suria seeking repayment of the debt owed to Mr. Butler. Mr. Suria refused to make any payment at that time.

15. In September of 2015, when the unpaid debt Defendant owed to Plaintiff had grown to approximately two hundred ninety-seven four hundred fifty three dollars ($297,453) Mr. Butler again contacted Mr. Suria regarding repayment on the debt, Mr. Suria responded with a repayment proposition, namely: Mr. Suria could repay Mr. Butler in a mix of cash and shares in various companies held by Mr. Suria.

16. The parties discussed that repayment option, and Plaintiff Butler rejected the idea of partial payment by shares because of impossibility of performance by Defendant. Specifically, Plaintiff learned Defendant could not lawfully deliver on Defendant's promise because Mr. Suria, on information and belief, intended to use restricted securities over which he did not have sole control to repay Plaintiff.

17. As the negotiations continued, Mr. Suria promised verbally and over email to pay back the loan in its entirety, but refused to sign a promissory note memorializing the loan amount and repayment terms.

18. Between October of 2015 and August of 2016, Mr. Suria began to follow through on his promise to repay Mr. Butler and did, in fact, pay to Mr. Butler eighty thousand dollars ($80,000) on the debt, valued as of September 30, 2015 at $297,454 resulting in an outstanding debt obligation as of September 2016 (taking into account Defendant's partial payment and accruing interest) of two hundred fifty thousand three hundred sixty three dollars ($250,363).

19. Given the good track record of repayment, and in a gesture of good faith, in September of 2016, Mr. Butler verbally agreed to a proposal by Mr. Suria that would pay down some of the personal debt to Mr. Butler by a transfer of 200,00shares (purchased for $100,000 dollars) in

Fresh Mat, Inc., a Delaware corporation,[6] to Plaintiff Butler. Those shares were purchased by Cauvery Consumer Group, LLC an LLC of which Mr. Suria is, on information and belief, the managing member. Mr. Butler sent to Mr. Suria documents contemplating just that transaction, (referred to herein as the "Cauvery Agreement") in October of 2016.

20. In communication associated with the Cauvery Agreement, Mr. Butler informed Mr. Suria that Mr. Suria's failure to repay the debt to date would cause Mr. Butler to re-open his divorce agreement with Ms. Melanie Butler.

21. Upon receipt of the Cauvery Agreement transaction documents, Mr. Suria responded that he could sign the shares over to Mr. Butler. However, the agreement died on Mr. Suria's desk and the transaction was never consummated.

22. In October of 2016, following a request from Mr. Suria, Mr. Butler provided a signed letter to Mr. Suria stating Mr. Suria had made the $80,000 in payments described above.

23. Since November of 2016, Mr. Suria has not communicated with either Mr. Butler or Mr. Butler's agents or attorneys on this matter. This silence is a breach of Mr. Suria's promise to repay the monies lent to him.

24. On February 20, 2017 a letter was sent to Mr. Suria at three different addresses in New York, including his businesses and home and to the email address through which Plaintiff and Defendant had successfully communicated. The letter described the current conflict, the debt amount outstanding and sought Mr. Suria's attention to the matter. Mr. Suria ignored the letter and its contents.

25. As of the end of March, 2017, the debt owed to Mr. Butler by Mr. Suria, taking into account simple, annual interest of 15% and the payments Mr. Suria made to date, equals $269,737 (the "Net Original Debt").

26. As of April of 2017, Mr. Butler is considering that he must now re-litigate his divorce from Ms. Melanie Butler.

---

[6] Mr. Butler is the majority shareholder in, and CEO of, Fresh Mat, Inc.

27. As of April of 2017, Mr. Suria's LLC retains possession of shares in Fresh Mat, Inc. for which Fresh Mat, Inc. received $100,000.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Breach of Contract on the Original Debt)

28. Plaintiff repeats and re-alleges each of the allegations contained in the preceding paragraphs as if fully set forth herein.

29. The Loan Agreement by which Plaintiff lent money to Defendant, and Defendant agreed to pay it back constitutes a binding agreement between Plaintiff and Defendant.

30. Plaintiff has fully performed any and all obligations required by him pursuant to the Loan Agreement.

31. Defendant breached the Loan Agreement by (a) failing to pay to Plaintiff the Net Original Debt and (b) failing to document or communicate with Plaintiff concerning the debt and its repayment.

32. By virtue of the above, Plaintiff has been damaged in an amount to be shown at trial but not less than the Net Original Debt.

## AS AND FOR A SECONDCAUSE OF ACTION

### (Breach of Contract on the Agreement to Transfer Shares to Mr. Butler)

33. Plaintiff repeats and re-alleges each of the allegations contained in the preceding paragraphs as if fully set forth herein.

34. The Cauvery Agreement by which Defendant promised to transfer to Plaintiff 200,000 shares of Fresh Mat, Inc. in partial satisfaction of the Net Original Debt constitutes a binding agreement between the parties.

35. Plaintiff has fully performed any and all obligations required of him under the Cauvery Agreement.

36. Defendant has breached that agreement by failing to transfer the shares to Plaintiff.

37. By virtue of the above, Plaintiff has been damaged in an amount to be determined at trial, but not less than $100,000, the purchase price of the shares.

### AS AND FOR A THIRD CAUSE OF ACTION

### (Unjust Enrichment)

38. Plaintiff repeats and re-alleges each of the allegations contained in the preceding paragraphs as if fully set forth herein.

39. Defendant is unjustly enriched by the amount of the Original Debt in that he has to date received the loaned monies, used it to his benefit and failed to repay it to Plaintiff.

40. Defendant is unjustly enriched by his failure to perform on the Cauvery Agreement to transfer shares of Fresh Mat, Inc. to Mr. Butler.

41. It is a violation of law, equity and good conscience to permit Defendant to retain the value of the Original Debt and Shares.

42. By reason of the foregoing, Plaintiff has sustained, and will continue to sustain until made whole, damages in an amount to be determined at trial but in no event less than the Net Original Debt.

### AS AND FOR A FOURTH CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

43. Plaintiff repeats and re-alleges each of the allegations contained in the preceding paragraphs as if fully set forth herein.

44. Pursuant to the covenant of good faith and fair dealing implied in every contract under New York law, a party to a contract shall not do anything that will have the effect of destroying or injuring the other party's right to receive the benefits of the contract.

45. By Defendant's acts and omission, Defendant deprived Plaintiff of the benefits of the loan made to Plaintiff thereby breaching the implied covenant of good faith and fair dealing.

46. By Defendant's acts and omission, Defendant deprived Plaintiff of the benefits of the agreement to transfer shares of Fresh Mat, Inc. thereby breaching the implied covenant of good faith and fair dealing.

47. By reason of the foregoing, Plaintiff has sustained, and will continue to sustain until made whole, damages in an amount to be determined at trial but in no event less than the Net Original Debt.

## AS AND FOR A FIFTH CAUSE OF ACTION

### (Fraud)

48. Plaintiff repeats and re-alleges each of the allegations contained in the preceding paragraphs as if fully set forth herein.

49. Defendant willfully and with the intent to deceive made false statements to Plaintiff of a material fact, namely his intention and ability to repay in full the lent monies.

50. Defendant's statements regarding repayment are false and were false when communicated to Plaintiff.

51. Defendant's statements regarding repayment were made for the purpose of deceiving Plaintiff and/or inducing Plaintiff to act in accordance with Plaintiff's scheme and lend Plaintiff money.

52. Plaintiff believed Defendant's statements regarding repayment to be true and acted on them in good faith.

53. Defendant was injured as a direct result of Plaintiff's deceptions in an amount to be determined at trial but in no event less than the Net Original Debt.

54. Plaintiff is also entitled to punitive damages.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Jon Butler requests the following relief:

1. ON HIS FIRST CAUSE OF ACTION, a monetary judgment against Defendant in an amount to be determined at trial but in no event less than the Net Original Debt with interest;

2. ON HIS SECOND CAUSE OF ACTION, an order from the Court requiring transfer of the shares promised by Defendant in partial satisfaction of the Net Original Debt;

3. ON HIS THIRD CAUSE OF ACTION, a monetary judgment against Defendant in an amount to be determined at trial but in no event less than the Net Original Debt with interest;

4. ON HIS FOURTH CAUSE OF ACTION, a monetary judgment against Defendant in an amount to be determined at trial but in no event less than the Net Original Debt with interest;

5. ON HIS FIFTH CAUSE OF ACTION, a monetary judgment against Defendant in an amount to be determined at trial but in no event less than the Net Original Debt with interest and punitive damages in an amount to be determined at trial but not less than $540,000;

6. With respect to all claims, the costs and disbursements of this action, including attorneys' fees, experts' fees, costs, costs of this action and expenses; and

7. Such other relief as this Court deems appropriate, just and proper.

Dated: April 27, 2017

                MILESTONE LEGAL, P.C.

By: _____

Philip Milestone (5396502)
43 W. 43rd St., #40
New York, NY 10036
212.653.0084
Philip@MilestoneLegal.com

*Attorneys for Plaintiff*