UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN CHRISTOPHER BUTLER,<br><br>                              Plaintiff,<br><br>                  -v.-<br><br>RAVI SURIA,<br><br>                              Defendant. | 17 Civ. 3077 (KPF)<br><br>**ORDER** |

KATHERINE POLK FAILLA, District Judge:

Before the Court is Plaintiff John Butler's motion for entry of judgment due to the alleged breach of a settlement agreement by Defendant Ravi Suria. For the reasons discussed below, Plaintiff's motion is granted.

## BACKGROUND[1]

Plaintiff filed the initial complaint in this matter on April 27, 2017, alleging breach of contract arising out of Defendant's purported failure to repay personal loans. (Dkt. #1). On December 2, 2019, the day trial was set to begin, the parties settled the case in open court. (*See generally* Hr'g Tr.). The relevant terms of the Settlement Agreement, as memorialized on the record,[2] are as follows:

---

[1] For convenience, the Court refers to Plaintiff's Letter Motion for Judgment as "Pl. Br." (Dkt. #132); Defendant's Letter in Opposition to the Motion for Judgment as "Def. Opp." (Dkt. #133); Plaintiff's Reply Letter in Support of His Motion for Judgment as "Pl. Reply" (Dkt. #134); and the transcript from the December 2, 2019 hearing in which the Settlement Agreement was memorialized as "Hr'g Tr." (Dkt. #117).

[2] The settlement was not memorialized in writing. (*See* Dkt. #137-138).

>*First*, that Defendant would cause an entity under his control to pay Plaintiff a total of $195,000 in installments. (*Id.* at 6:8-7:13).[3]
>
>*Second*, that Plaintiff would provide Defendant with "balance sheets and income statements ... for the years 2017, 2018, and 2019" for Fresh Mat, an entity for which Plaintiff served as founder and CEO. (*Id.* at 7:22-25). In particular, the Settlement Agreement stated that the 2017 and 2018 financial documents "shall be provided ... by January 2, 2020," and that the 2019 documents "shall be provided by May 1st, 2020." (*Id.* at 7:25-8:2).
>
>*Third*, that after receiving the financial documents, Defendant would, in his role as fiduciary of Cauvery Consumer Group, LLC ("Cauvery"), an entity that owned shares of Fresh Mat, attempt in "good faith" to sell those shares back to Plaintiff. (*Id.* at 24:15-23).
>
>*Fourth*, that the Court retained jurisdiction to enforce the terms of the Settlement Agreement. (*Id.* at 12:1-8).

After Defendant failed to make certain payments under the Settlement Agreement, Plaintiff so advised the Court (*see* Dkt. #119), prompting several conferences with the Court to determine if the settlement could be preserved (*see* Dkt. #122, 124, 125, 131). When those efforts failed, Plaintiff filed a motion for entry of judgment on July 2, 2020 (Dkt. #132); Defendant filed his opposition on July 16, 2020 (Dkt. #133); and Plaintiff filed his reply on July 23, 2020 (Dkt. #134). By Order dated July 31, 2020, the Court informed the parties it intended to decide the motion on the parties' submissions, and

---

[3] The payment schedule under the terms of the Settlement Agreement provided as follows: $10,000 to be paid by close of business on December 2, 2019; $10,000 to be paid by the close of business on December 16, 2019; $20,000 to be paid by the close of business on January 2, 2020; $20,000 to be paid by the close of business on February 2, 2020; $10,000 to be paid by close of business on the second day of each month from March 2020 until February 2021; and $15,000 to be paid by close of business on March 2, 2021. (Hr'g Tr. 6:8-7:13).

2

invited the parties to submit additional factual support to supplement their briefing. (Dkt. #135). Neither party submitted a response to this Order. On August 7, 2020, the Court requested that the parties file letters to address the issue of prejudgment interest (Dkt. #136), which letters were received by the Court on August 14, 2020 (Dkt. #137, 139).

## DISCUSSION

**A.   Applicable Law**

"A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it." *Meetings & Expositions, Inc.* v. *Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974). Whether New York State or federal common law governs a dispute over a settlement agreement remains an open question in the Second Circuit, but that Court has found "no material difference between the applicable state law or federal common law standard." *Kaczmarcysk* v. *Dutton*, 414 F. App'x 354, 355 (2d Cir. 2011) (summary order) (internal quotation marks omitted) (quoting *Ciaramella* v. *Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 322 (2d Cir. 1997)). A settlement agreement — whether written or oral — is a "contract that is interpreted according to general principles of contract law." *Omega Eng'g Inc.* v. *Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005).

**B.   Analysis**

As an initial matter, the parties agree that the Settlement Agreement is binding and enforceable. (Pl. Br. 4; Def. Opp. 2; *see also* Dkt. #130). Plaintiff claims — and Defendant concedes — that Defendant has paid only $60,000 of

the $195,000 owed under the Settlement Agreement and is therefore in breach of its terms. (Pl. Br. 5; Def. Opp. 1; *see also* Dkt. #121). The issues in dispute concern whether Defendant has a valid defense to the breach and whether he is entitled to have the breach excused. In this regard, Defendant raises three objections to Plaintiff's motion for entry of judgment: (i) Defendant states that he is financially unable to pay (Def. Opp. 1); (ii) he argues that Plaintiff breached the agreement first by failing to deliver the Fresh Mat financial documents on time (*id.*); and (iii) he alleges that Plaintiff improperly dissolved Fresh Mat, and asserts that it would therefore be "inequitable" to enforce the Settlement Agreement (*id.* at 2).

*First*, Defendant claims that he is unable to perform under the Settlement Agreement due to financial difficulty. (Def. Opp. 1). But inability to pay is not a defense to breach of a settlement agreement. *See Ebert* v. *Holiday Inn*, 628 F. App'x 21, 23 (2d Cir. 2015) (summary order) (noting that, under New York law, "[e]conomic hardship, even to the extent of bankruptcy or insolvency, does not excuse performance"). To the extent Defendant argues that financial difficulty caused by the COVID-19 pandemic excuses performance, Defendant has not met the high burden to establish that this excuse applies. *See, e.g.*, *Lantino* v. *Clay LLC*, No. 18 Civ. 12247 (SDA), 2020 WL 2239957, at *3 (S.D.N.Y. May 8, 2020) (refusing to excuse performance of a settlement agreement despite gym's claim that financial difficulty caused by COVID-19 and attendant emergency orders closing all gyms excused payment).

*Second*, Defendant argues that Plaintiff breached the Settlement Agreement first, by delivering the Fresh Mat financial documents late. (Def. Opp. 1).[4] Only now does Defendant appear to argue that late delivery constitutes a *material* breach that obviates a need to perform under the agreement. (*See generally* Def. Opp.). Even so, Plaintiff offers evidence to refute the allegation that he delivered these documents late (Pl. Br. 3; *id.* at Ex. 1, 4), which evidence Defendant does not dispute (*see generally* Def. Opp.). In any event, the Court need not determine whether late delivery occurred or constituted a material breach under the Settlement Agreement, because Defendant has waived this putative breach.

"[U]pon learning of a breach, a party must choose between terminating the contract and continuing performance. If a party chooses to continue performance, it must give notice of the breach to the other side, or it waives its rights to sue the breaching party." *Lockheed Martin Transp. Sec. Sols.* v. *MTA Capital Constr. Co.*, No. 09 Civ. 4077 (PGG), 2014 WL 12560686, at *19 (S.D.N.Y. Sept. 16, 2014) (internal quotation marks omitted) (quoting *Medinol Ltd.* v. *Boston Sci. Corp.*, 346 F. Supp. 2d 575, 620 (S.D.N.Y. 2004)). Here, Defendant waived any breach caused by late delivery of the financial

---

[4]     Defendant also claims that Plaintiff provided the 2017 and 2018 financial documents for the wrong entity, sending documents relating to "Fresh Mat LLC" instead of "Fresh Mat Inc." (Def. Opp. 1). Preliminarily, Defendant does not claim that this constituted a breach, but rather only that it caused "confusion." (*Id.*). Even so, Plaintiff has explained that "LLC" appearing on the documents instead of "Inc." was a "clerical error" caused by Plaintiff's accounting system (Pl. Br. 3; *id.* at Ex. 4), and submitted revised documents that were substantively identical except for the entity's name (*id.* at Ex. 4-5). Defendant has offered no evidence to call Plaintiff's explanation into question, and in any event, as discussed above, has waived this putative breach.

5

documents by: (i) failing to give notice that he considered late delivery a material breach before and after accepting the documents and continuing performance (Dkt. #121, 126); (ii) conceding that Plaintiff provided all the documents required by the Settlement Agreement (Dkt. #126, 130); and (iii) repeatedly representing to the Court and to Plaintiff that he would perform under the Agreement but for financial difficulty (*e.g.*, Def. Opp. 1; Dkt. #121). Thus, even if late delivery of the Fresh Mat financial documents constituted a material breach, which it did not, Defendant has waived this breach.

*Third*, Defendant argues that it would be "inequitable" to enforce the settlement agreement because Plaintiff "improperly" dissolved Fresh Mat. (Def. Opp. 2). Defendant alleges that the dissolution of Fresh Mat deprived him of "key expected value" that was "considered in connection with the settlement terms." (*Id.*). Presumably, Defendant is referring to the provision in the Settlement Agreement that required him to endeavor, in good faith, to sell Fresh Mat shares back to Plaintiff on behalf of Cauvery (an entity that is not a party to the settlement). (*See* Hr'g Tr. 24:15-23). But the Settlement Agreement contains no provision preventing Plaintiff from dissolving Fresh Mat. (*See generally* Hr'g Tr.). And to the extent Defendant takes issue with the value that shareholders received when Plaintiff dissolved Fresh Mat, that is an issue outside the scope of the Settlement Agreement. (*Id.*). *See also Sorrell* v. *Inc. Vill. of Lynbrook*, No. 10 Civ. 49 (DRH) (GRB), 2017 WL 6210814, at *3 (E.D.N.Y. Dec. 7, 2017) ("Where a [settlement agreement] is unambiguous 'it is enforced according to its terms, and the court will generally not look outside

the four corners of the document to add to or vary it.'" (quoting *Rosenblatt* v. *Christie*, 195 F. App'x 11, 12 (2d Cir. 2006) (summary order))). Cauvery or other Fresh Mat shareholders are free to litigate this claim in a separate action, but it does not constitute a breach of the Settlement Agreement.

Finally, Plaintiff seeks prejudgment interest dating back to March 2, 2020, the date Defendant breached the Settlement Agreement. (Dkt. #139). "Under New York law, prejudgment interest 'shall be recovered upon a sum awarded because of a breach of performance of a contract.'" *NML Capital* v. *Republic of Argentina*, 621 F.3d 230, 239-40 (2d Cir. 2010) (quoting N.Y. C.P.L.R. § 5001(a)); *see also Guang Hui Zhu* v. *Sushi Time 2nd Ave., Inc.*, No. 14 Civ. 4326 (CM), 2018 WL 2538226, at *2 (S.D.N.Y. May 21, 2018) (applying N.Y. C.P.L.R. § 5001 to award prejudgment interest on breach of settlement agreement). "Such interest shall be computed 'from the earliest ascertainable date the cause of action existed' at the rate of 9 percent per annum." *Kasperek* v. *City Wire Works, Inc.*, No. 03 Civ. 3986 (RML), 2009 WL 691945, at *3 (E.D.N.Y. Mar. 12, 2009) (quoting N.Y. C.P.L.R. §§ 5001(b), 5004) (enforcing settlement agreement). In analogous situations, courts routinely award prejudgment interest only "on the [settlement] payments that were not timely made." *Id.* (awarding interest calculated from the date of each past-due payment under settlement agreement); *see also Febus* v. *Guardian First Funding Grp.*, 90 F. Supp. 3d 240, 250 (S.D.N.Y. 2015) (same); *Jean* v. *Auto & Tire Spot Corp.*, No. 09 Civ. 5394 (ARR) (RLM), 2013 WL 2322834, at *5

(E.D.N.Y. May 28, 2013) (same). Applying that principle here, Plaintiff is entitled to $1,560.82 in prejudgment interest.[5]

## CONCLUSION

For the reasons set forth in this Opinion, Plaintiff's motion for entry of judgment in the amount of $135,000, plus $1,560.82 in prejudgment interest, is GRANTED.

SO ORDERED.

Dated:  August 31, 2020
        New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

---

[5]  Prejudgment interest in this instance is calculated as follows: 9% interest on the $10,000 payment due March 2, 2020, from the date the payment became past-due; 9% interest on the $10,000 payment due April 2, 2020, from the date the payment became past-due; 9% interest on the $10,000 payment due May 2, 2020, from the date the payment became past-due; 9% interest on the $10,000 payment due June 2, 2020, from the date the payment became past-due; 9% interest on the $10,000 payment due July 2, 2020, from the date the payment became past-due; and 9% interest on the $10,000 payment due August 2, 2020, from the date the payment became past-due. Plaintiff is also entitled to post-judgment interest dating from the entry of judgment. 28 U.S.C. § 1961.